Mr. Justice Cox
delivered the opinion of the Court:
This case turns upon the proper construction to be given to the will of Charles Myers, of Georgetown. That will, after making provisions to pay for his funeral expenses and all his just debts, proceeds as follows:
' “I give, devise and bequeath unto my dear wife, Jane C. Myers, all of my property, both real and personal, wherever and withsoever (sic) situated, to take, have and receive the same and the profits thereof during the term of her natural life, so long as she shall remain my widow and unmarried.
“Thirdly, from and after her death, I give, devise, and bequeath unto Morris J. Adler and John E. Libbey, and the survivor of them, and the heirs of such survivor, all of my real estate and personal effects, to sell and dispose of the same and valid deeds of conveyance to make to the purchasers thereof, on payment of the purchase money; and out of the proceeds of sale, after paying expenses, I devise to each of my said daughters, viz., Emma I. Myers, Fannie *519 I. Myers, and Mary C. Myers, the sum of three thousand dollars each ; which said legacies are to be taken possession of by the said Morris J. Adler and John E. Libbey, and the survivor of them and invested in real estate, or some safe securities, according to the request of my said daughters, and they to receive the rents and profits of the same free from the control of any husbands they may'marry, and not to be liable for their debts.
“Fourthly, the surplus of my estate, after paying the above named legacies, I give, devise and bequeath unto Emma I. Myers, Francis I. Myers, Mary C. Myers and John W. P. Myers, to be divided equally among them, share and share alike.”
Two of the daughters married, and one of them, Emma, died before her mother, after making a will by which she devised her interest in her father’s estate to her- two sisters. It is claimed on the part of the son, John W. P. Myers, that the interest devised to the daughters was a contingent remainder which is not the subject of devise, so that Emma’s share would fall into the residue, as a lapsed legacy, and the son is entitled to share that part of his father’s estate, equally with his surviving sisters.
At special term it was assumed by the Court that this was a contingent remainder, and the discussion there seems to have turned upon the point whether 'a contingent remainder can be devised. The Court dismissed the bill upon the ground that the contingent remainder could be devised.
In this Court, it is claimed on the part of the defendants, the daughters, that this was a vested remainder, but that whether vested or contingent, it. was capable of being devised.
We all know that the definition of a remainder is “an estate limited to take effect in possession immediately after the expiration of a prior estate created by the same instrument.” We also know, from the elementary works, that *520 remainders are vested and contingent, and that contingent remainders, again, are divided into several kinds: one kind is where the contingency upon which the estate is limited over may not take effect until after the expiration of the particular estate, or, in other words, the particular estate expires before the contingency happens. There being no one to take the freehold, it goes back to the grantor or his heirs, and the remainder is lost; and so long as it remains uncertain whether the contingency will happen before or simultaneously with the expiration of the prior estate, it is uncertain whether the right to the remainder will ever become fixed, and it is therefore called a contingent remainder.
In this case, it is maintained that the estate given to these daughters is of that description. It is contended that the devise to the wife is during her widowhood only, while the remainder is given over upon her death, and inasmuch as her widowhood may terminate before her life, there may be a hiatus between that and the time when this remainder over is to take effect, and so long as that uncertainty exists, the remainder is contingent. Therefore the first inquiry is, what estate was given by the will to the widow?
It will be observed that the will does not, in terms, give to her the property to hold during widowhood, but it is expressly given to her, “to have and receive the same and the profits thereof during the term of her natural life, so long as she shall remain my widow and unmarried.”
We are unanimously of the opinion that this gave to her an estate for the term of her life, and that the words “ so long as she shall remain my widow and unmarried ” are merely a qualification or condition attaching to that estate, a condition subsequent upon the breach of which the estate is liable to be defeated; that is, if the widow should marry, the heii’s might enter and dispossess her, and that might defeat the remainder over; but until the breach of the condition it rexnains a complete life estate in the widow. In 2 Washburn on Real Property, page 6, it is said:
*521 An instance of a condition subsequent would be a grant to A and his heirs, tenants of the manor of Dale, or to B, so long as she remains a widow. The estates in these cases vest subject to be devested, in the one case upon the grantees ceasing to be tenants of Dale, and the other upon the marriage of the grantee.
The present case is a much stronger one than that. In the case supposed, the estate was given to her so long as she was a widow or so long as she might be á widow, and it might very well be contended that that qualification was a limitation of the estate. But in the present case the estate is given to her for and during the term of her natural life, so long as she should remain a widow, and that is clearly a case of a condition subsequent. The particular estate, therefore, is not an estate to her during widowhood, but it is an estate to hei\ during her life, and the remainder is limited over to take effect upon the termination of that life estate. Therefore, there can be no possibility of a hiatus between the termination of the particular estate and the commencement of the remainder; and consequently it does not belong to the category of contingent remainders to which I have referred.
The test of a vested remainder is its present capacity to take effect in possession whenever the prior estate shall determine ; that is, if the remainderman has the right, in case of a sudden determination of the prior estate, immediately to go in and take possession, the remainder is vested.
Apply that test to the present case. At any time during the widow’s life, if she had suddenly died, the trustees could have entered into possession; their remainder was, therefore, vested. A remainder is none the less vested because it is liable to be devested or destroyed. For example, if an estate be limited to A for life, remainder to such uses as B shall appoint, and, in default of such appointment, remainder to C, the remainder to C would be vested because at any moment when A should die, C would be entitled, at *522 once, to enter into possession, but it would be simply subject to be devested by the exercise of the power of appointment. So, also, if an estate be limited to one for life and remainder over to his children, present and future, the present children have a vested remainder, liable to be devested pro tanto in favor of the afterborn children. . Nor does the liability of the particular estate to be defeated by a breach of the condition subsequent make the remainder any the less a vested remainder. As Washburn also says, Yol. 2, p. 601 (231):
“The remainderman must accordingly wait until the particular estate has regularly determined, and can do nothing to abridge it; and if, as already stated, before that time it is defeated altogether, as by an entry by the grantor for condition broken before the remainderman comes into possession, the estate of the latter fails altogether.”
That assumes, of course, that until the condition is broken, the remainder is vested.
But the argument for the complainant in this case goes further, and undertakes to deal with this as if it were the case of a pecuniary legacy jjayable at a future time and charged upon real estate, in which case, it is claimed, that upon the death of the legatee before the time of the payment, the legacy fails; in other words, that such a legacy is deemed to be contingent upon the capacity of the legatee to take at the time when the money is ¡íayable. The inclination of the Court is always to hold that a personal legacy is vested although payable in futuro. There are, however, cases in which courts lean in the opposite direction. Thus: “It is a general rule ever since Pawlett’s Case (2 Ventr. 366, 1 Vern. 204, 321, 2 Ch. Rep. 286), followed by a multitude of cases, that where money is given to be paid at a future time (for if payable presently the rule cannot apply) out of the real estate, and the legatee dies before the time, it sinks into the estate; and the same rule prevails where a legacy is charged on real estate to be purchased with the residue of a personal estate. And whether the legacy be *523 given by a parent or a stranger, charged upon land primarily or as auxiliary to the personal estate, and though given with interest, yet if the legatee dies before it is payable, the rule is the same, and the legacy sinks into the land.. 2 Madd. Ch. Rep. 25, 26.”
The rule is probably stated more fully in the following quotation from Butler’s Notes to Fearne on Remainders, 9th edition, page 554.
“The rule adopted in respect to legacies payable out of personal estate, that where the gift and the time of payment are distinct, the legacy vests immediately, does not hold generally in regard to legacies charged on real estate. The reason of this distinction is that in the civil law, a bequest to a person to be paid at a future time was held to confer on him a present right to the legacy, notwithstanding the time of payment was future; so that immediately on the testator’s decease it became in the eye of the civil law a present debt, payable at a future time. Debitum in praisenti solvendum in futuro. Now anciently legatory matters arising on personal estate were solely under -the jurisdiction of the ecclesiastical courts, and the decisions of those courts were regulated by the civil law. By degrees courts of equity took cognizance of them and, with a view of uniformity of decision, adopted the rule in question. But legacies payable out of real estate never fell within the cognizance of the ecclesiastical courts; there was not, therefore, the same reason for applying this rule to that description of legacies; and as it appeared contrary to the favor which the law shows to the owner of the inheritance, courts regulated it as a general rule in respect to all such legacies!’ (Citing Pawlett’s Case, supra.) “ In respect, therefore, to legacies charged on real estate, it became a general rule that legacies payable at a future time, whether by the language of the bequest the time is annexed to the substance or to the payment'of the legacy, as a bequest to a person of a sum of money at twenty-one, or a bequest to a person of a sum of money *524 payable to him at twenty-one, equally sink into the land for the benefit of the inheritance, if the legatee dies under twenty-one.”
That rule, however, is again qualified, and that qualification is stated in 1 Jarman on Wills, 756:
“The established distinction now is that if the payment be postponed, with reference to the circumstances of the devise of the money, as ixx the case of a legacy to A, to be paid to him at twexxty-oxxe yeax’s, the charge fails, as formerly, uxxless the devisee lives to the time of payment. * * * But, on the other hand, if the postponement of paymexit appear to have reference to the situation or convenience of the estate, as if land be devised to A for life, remainder to B in fee, charged with a legacy to C, payable at the death of A, the legacy will vest instanter; and, consequently, if C dies before the day of payment, his representatives will be entitled, the raising of the money being evidently deferred until the decease of A, in order that he may, in the meantime, exxjoy the laxid free from burden. But either of these rules of construction of course will yield to an expression of a contrary intention.”
Now, as thus qualified, the rule does not avail the complainant in any way in the present case, as we think, because it is the very case in which it is evidexxt that the payment of the legacy was withheld uxxtil the decease of the widow with reference to the convenience of the estate, and in order that she might in the mean time enjoy the land free from burden.
But, speaking for myself, it is my judgmexxt that all this learning about legacies payable in futuro is entirely inapplicable here. All the Authorities cited under this head were cases ixx which the land descended or was devised to one person and the legacy charged on it to another. In this case, the land itself is primarily devised, and the devise is absolutely and unconditionally for the benefit of these legatees. It cannot be said that Emma Myers had a pex’sonal *525 legacy of $3,000, charged on the land belonging to somebody else, for this very land was devised for her benefit and sold for her benefit pro tanto. The land was to be sold and turned into money for the benefit of all these legatees. It was charged, not with a legacy hut with a trust. It makes no difference whether the trustee was to hold the land and apply the rents and profits to the use of the beneficiaries, or to sell the land and divide the proceeds among them. In either case, the devise was a devise of the real estate for their exclusive benefit. It was substantially and primarily a devise of the land itself, and not a devise of a personal legacy charged upon the land.
The question of equitable conversion does not figure in this case. If the daughter Emma had died intestate, then the question might be whether after the trustees had sold the land the money arising therefrom should be paid to her personal representatives or her heirs. But that question is not important here. We are satisfied that this will was 'valid and devised a vested interest, which could be devised,; and, therefore, although on different grounds from those upon which the judge at the Special Term decided the case, we affirm the decree below.